# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BUENA VISTA ESTATES, INC.,
A New Mexico Corporation,

     Plaintiffs,

v.                                                    Civ. No.

SANTA FE SOLID WASTE
MANAGEMENT AGENCY,
And SANTA FE COUNTY,

     Defendants.

## COMPLAINT

Plaintiff, Buena Vista Estates, Inc. ("Buena Vista"), by and through its attorneys,

Domenici Law Firm, P.C. (Pete V. Domenici, Jr., Esq.) for its Complaint against Defendants,

Santa Fe Solid Waste Management Agency ("SFSWMA") and Santa Fe County ("SFC), states

the following:

## BACKGROUND

The Santa Fe Solid Waste Management Agency ("SFSWMA"), a joint authority of the

City of Santa Fe and Santa Fe County, was created in 1995.  The purpose of SFSWMA was to

create, maintain and operate a modern, fully EPA-certified landfill for use by residents of the

City of Santa Fe and Santa Fe County.   The old landfill located on the site of the current

Buckman Road Recycling and Transfer Station, was at the end of its useful life.  Under the initial

joint agreement, the City of Santa Fe was tasked with obtaining the necessary landfill permits

and the County with obtaining the real property for the new landfill.  SFSWMA began operations

at the new Caja del Rio Landfill in 1997.  The original plan for Caja del Rio called for soil cover

from each disposal cell to be removed and stored and used for use in the daily, intermediate and

final covers of compacted solid waste.  The basalt bedrock was to be blasted into lumps that could be excavated with heavy equipment, loaded into heavy mining dump trucks and transported to a storage waste (tailings) pile located next to the landfill disposal area (cells).  For many years, this waste pile was not considered an asset, but a waste product.  Both the soil cover and the underlying (waste) basalt were blasted, excavated and stored in the planned manner.

Randall Kippenbrock, P.E. has been the director of the Santa Fe Solid Waste Management Agency that oversees the Caja del Rio landfill since June 2004.  Early in his tenure as executive director, in consultation with the Agency's Joint Powers Board and others, he determined that the basalt could be crushed and sold as aggregate.  Beginning October 7, 2013, Caja del Rio Landfill began construction of its next disposal space for solid waste, referred to as cell 5B, which will hold approximately 600,000 tons of solid waste over a useful life of four years.  Like previous cells, creation of this cell or pit required blasting, which occurred 25 times between October 7, 2014 and February 21, 2014, an average of approximately 590,000 tons of basalt were excavated from the cell, roughly equivalent to 279,000 cubic yards.  The cost of blasting and excavating for cell 5B is public information, and was $1.6 million.  From this reported information; it is possible to calculate the per-ton cost of blasting and excavating Caja del Rio basalt at $2.87 per ton.  As noted by Kippenbrock, "The Santa Fe Solid Waste Management Agency recently entered into an eight-year contract with Del Hur Industries of Port Angels, WA to continue to crush and sell aggregate materials produced from the Caja del Rio Landfill.  The Agency estimates there is a stockpile of 1.6 million tons of unprocessed basalt rock at the landfill.  The Agency anticipates that it will take 8 to 16 years to sell it all, depending on the market and economy.  In conjunction with the agreement with the Agency, Del Hur Industries has an exclusive aggregate supply agreement with Associated Asphalt and Materials

of Espanola, NM where Associated Asphalt and Materials agrees to purchase 110,000 tons of

aggregate materials annually form Del Hur Industries…Based on the past eight years of

aggregate sales at the Caja del Rio Landfill, it is my opinion that there is not a need for a second

basalt rock quarry in Santa Fe County. Furthermore, I feel both the Agency and County have a

moral obligation to ensure that the stockpile of unprocessed basalt rock is used first before

approving another rock quarry." (Exhibit A, Letter of Randall Kippenbrock, P.E., Executive

Director of SFSWMA)

Caja del Rio operates under EPA and State standards for landfills, and has a solid waste

landfill permit. The Caja del Rio solid waste permit governs disposal of solid waste at Caja del

Rio. The solid waste permit for Caja del Rio does not regulate or authorize production blasting

and sales of aggregate materials. There has been no public notice by SFSWMA of Caja del

Rio's aggregate production blasting and sale of aggregate. Caja del Rio, being self-regulated by

the SFSWMA regulatory body, is being provided a competitive/regulatory advantage for the

production and sale of aggregate product.

In the SFSWMA Permit Application to modify [expand] and review…20.9.3.8A., "Any

person seeking to construct, operate, modify or close a solid waste facility shall first obtain a

permit. Santa Fe Solid Waste Management Agency (SFSWMA) will construct, operate, modify

and close the Caja del Rio Landfill (Landfill) in accordance with the current Permit NO. SWM-

261708 and SWM-030706(SP) until a modification and renewal is approved by the Secretary.

This application will modify and renew the existing Landfill permit which was issued on June

27, 1995."

In the SFSWMA Permit Application 20.9.3.8A (4)(b) to modify [expand] and review…

"Provide site information including…(b) total acreage, legal description and maps of the

3

proposed facility site, including land use and zoning of the site and adjacent

properties;...Presently zoning in Santa Fe County is presumptively residential except for

commercial property and as shown in approved master planned areas. The use of the site as a

(_____)(this appears to be a typo, we don't know what was to be inserted here) predates most

other uses in the area. Santa Fe County is presently working on an ordinance that will create

zoning for the entire County, including the designation of the Landfill. That ordinance is

expected to be heard and acted upon by the Santa Fe County Commission in the Fall of 2013. In

preparation of this permit modification and renewal application, the Santa Fe County Attorney

was consulted regarding the land use status and zoning.  The County Attorney confirmed the

status and plans for incorporating the Landfill use in the land use and zoning ordinance."

Buena Vista Estates, Inc. is the private property owner of 1,359 acres in Santa Fe County.

Buena Vista Estates petitioned for a zoning change to establish a basalt mining operation on 50

acres of the 1,359 acres. The 50 acres are not subject to conservation easements, covenants or

other restrictions, or view easements.  Pursuant to Article XI of Zoning for Extraction of

Construction Materials, the applicability requires, "Mineral extraction activity for construction

materials, including but not limited to, stone, sand, gravel, aggregate, or similar naturally

occurring materials, (hereinafter: construction materials) shall be allowed anywhere in the

County, provided the requirements of this Ordinance are met."

### The Buena Vista Solid Waste Permit Application

1. On November 8, 2013, Buena Vista submitted an application to Santa Fe County
   seeking approval under Santa Fe County Development Code Article XI to create a
   mining zone to allow the extraction of aggregate for use as a construction material.

2.  The County Development Review Committee (CDRC), appointed by the Board of County Commissioners of Santa Fe (BCC), met on March 20, 2014 to review the Application and voted 5-2 to recommend that the BCC deny the Application.

3.  On May 27, 2014, the Building and Development Services staff based on a review of the Application and Article XI of the Santa Fe County Land Development Code, recommended approval of the Application subject to two additional conditions.

4.  On June 11, 2014, the BCC held a public meeting, at which the staff and the Applicant made presentations in support of the Application.

5.  At the conclusion of the June 11, 2014 hearing, the public hearing was continued until July 8, 2014 and then rescheduled for August 12, 2014.

6.  On July 29, 2014, the staff provided the BCC with a summary of the additional information requested and obtained and again recommended approval of the application with conditions.

7.  The second public hearing was held on August 12, 2014 and, at the end of the hearing, the BCC closed the record on the Application and announced that it would issue findings of fact, conclusions of law and a final decision.

On September 16, 2014, the Board of County Commissioners of Santa Fe County adopted a one-year moratorium, "An Emergency Interim Development Ordinance Imposing a Twelve Month Moratorium on Development Approvals or Issuance of Development Permits for Specified Developments of Countywide Impact."   The moratorium only applies to landfills, junkyards, and sand and gravel extraction activity requiring blasting. (Exhibit B, Section 4)  The moratorium does not apply to oil and gas drilling and production; mining and resource extraction

(other than sand and gravel extraction); substantial land alterations; large-scale feedlots and

factor farms; sand and gravel extraction that does not require blasting. (Exhibit B, Section 5)

## INTRODUCTION

I.   **Antitrust Claims**

1.   Santa Fe Solid Waste Management Agency ("SFSWMA") and Santa Fe County

("SFC") own and operate Caja del Rio Landfill, the solid waste landfill in Santa

Fe that is being self-regulated by the SFSWMA regulatory body and is being

provided a competitive/regulatory advantage for the production and sale of

aggregate product.

2.   SFCSWMA and SFC entered into an agreement with Del Hur Industries of Port

Angeles, WA to crush and sell aggregate materials from the Caja del Rio Landfill.

In conjunction with the agreement, Del Hur Industries has an exclusive aggregate

supply agreement with Associated Asphalt and Materials of Espanola, NM where

Associated Asphalt and Materials agrees to purchase 110,000 tons of aggregate

materials annually from Del Hur Industries.  In the operating agreement between

SFCSWMA, SFC and Del Hur Industries, rather than indicate they will operate

under an appropriate County special use permit and County conditions, they

attempt to contract for typical and required special use provisions in lieu of

obtaining appropriate zoning and special use permits.

3.   SFSWMA and SFC knowingly formed the mining operation of Caja del Rio

Landfill without proper permitting and zoning for the operation.

4.   SFSWMA and SFC's formation and operation of mining aggregate from Caja del

Rio Landfill without proper permitting and zoning, and the moratorium on new

mining operations in Santa Fe, resulted in an unreasonable restraint of trade on basalt mining operations in Santa Fe.

5.  Buena Vista Estates, Inc. will provide similar or higher quality basalt at a lower or competitive cost than the mined aggregate from Caja del Rio Landfill.  SFC and SFSWMA is operating an unpermitted and illegally zoned mining operation while placing a moratorium on new basalt mining operation in Santa Fe results in an unreasonable restraint on commerce, and gives SFSWMA and SFC control over the basalt mining product and services provided by Buena Vista Estates.

6.  To accomplish this goal, SFC and SFSWMA in the mining operation from Caja del Rio Landfill have committed and continue to commit, a series of anticompetitive and predatory actions that have no legitimate business justification.  These actions are designed to eliminate Buena Vista Estates, Inc. as a competitor and as a competitive producer for similar or higher quality basalt mining aggregate and services in Santa Fe.  These anticompetitive actions include, but are not limited to SFC allowing an unpermitted and illegally zoned sand and gravel operation while placing a moratorium on new basalt mining operations.  As a result, buyers of basalt are forced to receive lower quality and more costly basalt products from SFC and SFSWMA's Caja del Rio Landfill in Santa Fe, rather than being able to purchase similar or higher quality basalt at competitive prices from Buena Vista Estates in Santa Fe.  Further, SFC allows and has allowed Caja del Rio Landfill to operate without meeting zoning and special use permitting requirements applicable to them, giving them a competitive advantage over competitors.

7. Buyers of basalt in Santa Fe County and vicinity have been, and continue to be, injured by SFSWMA and SFC's attempted anticompetitive conduct. By establishing a moratorium on new basalt mining operations, SFCSWMA and SFC have limited basalt buyers' choice with respect to similar and higher quality basalt.

8. Buyers of basalt would suffer significant harm if SFSWMA was able to prevent Buena Vista from operating its basalt mining operation. First, basalt buyers and Buena Vista Estates will lose a competitive cost provider of similar or higher quality basalt in Santa Fe. Second, basalt buyers and Buena Vista Estates would lose access to Buena Vista's similar or higher quality basalt, which is made possible by its mining of similar or higher quality competitively priced basalt. Third, Buena Vista Estates' elimination from the market would deprive or limit basalt buyers of choice to where they purchase similar or higher quality competitively priced basalt in Santa Fe.

## II.   The Parties

9. Plaintiff Buena Vista Estates, Inc. is a New Mexico corporation organized under the laws of New Mexico for purposes which include providing a similar or higher quality, competitively priced basalt mining operation in Santa Fe County.

10. Defendants Santa Fe County ("SFC") and Santa Fe County Solid Waste Management Agency ("SFSWMA") in an agreement with Del Hur Industries own and operate a municipal corporation that operates a mining operation at the Caja del Rio Landfill, serving within and around the municipal boundaries of Santa Fe

County.  Santa Fe County is responsible for zoning and special use permitting at the location of the Caja del Rio Landfill, as well as the Buena Vista property.

### III.  Subject Matter Jurisdiction

11. Jurisdiction of this Court is based on 28 U.S.C. Section 1337, which grants original jurisdiction to the district court for any civil action or proceeding arising under any act of Congress.  Jurisdiction is also based on 15 U.S.C. Sections 15 and 26, which provide for damages and injunctive relief against threatened loss or damage, for violations of 15 U.S.C. Section 1 of the Sherman Act, and for costs of suit, including reasonable attorneys' fees.  This Court has pendent jurisdiction over the claims which are not brought pursuant to the federal antitrust laws (28 U.S.C. Section 1331).

12. Plaintiff's federal antitrust claims asserted herein arise under Section 1 of the Sherman Act (15 U.S.C. Sections 1) and are instituted under Sections 4 and 6 of the Clayton Act (15 U.S.C. Sections 15 and 26) to obtain injunctive relief against Defendants and their respective members, division, officers, directors, employees, agents, subsidiaries and affiliates to restrain them from further and continued violations of Sections 1 of the Sherman Act.

13. Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. Sections 15, 22, and 26, and 28 U.S.C. Sections 1391 (b) and (c). Venue is also proper since Defendants have their principal offices in the District of Santa Fe and are doing business in the District of Santa Fe.

### IV.  Trade and Commerce

14. Mining, Processing and Sale of basalt (collectively referred to as "Basalt") represent a line of trade and commerce adversely affected by SFC and SFSWMA's anticompetitive practices with the mining operation for Caja del Rio Landfill. Buena Vista Estates' provision of the mining and sale of the basalt constitute trade and commerce adversely affected by SFC and SFSWMA's anticompetitive practices.

15. The violations of law alleged herein have an effect on interstate commerce. The mining and sale of basalt are in, and affect interstate commerce.

16. Buena Vista Estates' business is engaged directly in and affects interstate commerce.

V. **The Relevant Market**

17. The bedrock for SFC and SFSWMA's anticompetitive practices is allowing its own illegal practices of operating an unpermitted and illegally zoned sand and gravel operation while preventing competition through the moratorium on new blast basalt mining in Santa Fe County.

18. Part of SFC and SFSWMA's anticompetitive strategy includes its attempts to control the market for any new basalt mining in Santa Fe County by placing a moratorium on new blast basalt mining enterprises and preventing Buena Vista Estates from operating a blast basalt mine in Santa Fe County without valid permitting, thereby putting Buena Vista Estates out of business through a variety of anticompetitive and predatory actions. The anticompetitive and predatory include allowing its own illegal mineral extraction activities.

VI. **Relevant Geographic Market**

19. The relevant geographic market for basalt mining is Santa Fe County.

20. Buena Vista Estates owns the land in Santa Fe County where the similar or higher quality basalt is located for blast mining of basalt.

21. SFC and SFSWMA own and operate Caja del Rio Landfill which is the unpermitted and illegally zoned sand and gravel operation that is sited on basalt and where the basalt mining is operating.

22. SFC and SFSWMA have instituted a moratorium on permitting of new basalt mining operations to operate in Santa Fe County.

VII. **SFC and SFSWMA Has Anticompetitive Control over Mining**

23. SFC and SFSWMA own and operate the Caja del Rio Landfill and SFC and SFSWMA control and operate the basalt mining operation at Caja del Rio Landfill in Santa Fe County without appropriate zoning or special use approval.

24. A moratorium on new basalt mining operations in Santa Fe County gives SFC and SFSWMA the unique role and position in the market, its market share overstates its competitive significance.

A. **Entry that Could Limit SFC and SFSWMA's Market Power is Difficult and Unlikely with a Moratorium on New Basalt Mining in Santa Fe**

25. SFC's moratorium on new basalt mining in Santa Fe would prevent Buena Vista Estates' entry in the Santa Fe Market for basalt mining to offer similar and higher quality basalt at competitive prices to the Santa Fe Market.

B. **Buena Vista Estates Can Not Effectively Restrain SFC and SFSWMA**

26. With SFC's moratorium on new basalt mining in Santa Fe in place, Buena Vista Estates is barred from obtaining permitting to operate its basalt mining operation

on its land in Santa Fe County.   However, SFSWMA is operating without permitting, zoning (Notice, Oversight and other requirements.)

27. The moratorium on new basalt mining operations put forth by SFC and SFSWMA prevents Buena Vista from obtaining permitting for the basalt mine operation in Santa Fe County, and prevents Buena Vista Estates from a significant competitive check on SFC and SFSWMA's anticompetitive actions of similar or higher quality basalt.

## COUNT I

### (Unreasonable Restraint of Trade – Sherman Antitrust Act, 15 U.S.C. 1)

28. Buena Vista Estates repeats and realleges all prior allegations.

29. SFC and SFSWMA possess market power in the relevant geographic and product market.

30. By engaging in the acts and practices alleged above, SFA and SFSWMA have unreasonably challenged restraint of trade in the relevant markets by knowingly joining together to operate an unpermitted and illegally zoned sand and gravel operation while opposing legal competition, thus depriving Buena Vista Estates and its customers of meaningful price competition and similar or higher quality aggregate, in violation of the Sherman Antitrust Act, 15 U.S.C. Section 1.

31. SFC and SFSWMA's actions are unlawful under the rule of reason analysis in that their actions resulted in an unreasonable restraint of interstate commerce by their knowingly joining to operate an unpermitted and illegally zoned mining operation at the Caja del Rio Landfill and have raised barriers to entry that foreclose meaningful price competition and offering similar and higher quality

aggregate and buyer choice.  There are no precompetitive virtues that justify this anticompetitive impact.

32. As a proximate and consequent result of SFC and SFSWMA's violations of Sherman Antitrust Act, 15 U.S.C. 1, Buena Vista Estates has been injured in its business and property in that:

   a.  It has lost and continues to lose profits which it would have made but for SFC and SFSWMA's actions;

   b.  It has lost and continues to lose business good will; and

   c.  It has suffered and will continue to suffer diminution in its going-concern values.

## COUNT II
### (Unreasonable Restraint of Trade – New Mexico Antitrust Act)

33. Buena Vista Estates repeats and realleges all prior allegations.

34. SFC and SFSWMA possess market power in the relevant geographic and product market.

35. By engaging in the acts and practices alleged above, SFC and SFSWMA have unreasonably restrained trade in the relevant markets by knowingly joining together to operate an unpermitted and illegally zoned sand and gravel operation while opposing legal competition, thus depriving Buena Vista Estates and its customers of meaningful price competition and similar or higher quality aggregate, in violation of the New Mexico Antitrust Reform Act, NMSA 1978, §§ 57-1-1 to 57-1-19.

36. SFC and SFSWMA's actions are unlawful under the rule of reason analysis in that their actions resulted in an unreasonable restraint of interstate commerce by

their knowingly joining to operate an unpermitted and illegally zoned mining operation at the Caja del Rio Landfill and have raised barriers to entry that foreclose meaningful price competition and offering similar and higher quality aggregate and buyer choice. There are no precompetitive virtues that justify this anticompetitive impact.

37. As a proximate and consequent result of SFC and SFSWMA's violations of New Mexico Antitrust Act, NMSA 1978, §§ 57-1-1 to 57-1-19, Buena Vista Estates has been injured in its business and property in that:

      d. It has lost and continues to lose profits which it would have made but for SFC and SFSWMA's actions;

      e. It has lost and continues to lose business good will; and

      f. It has suffered and will continue to suffer diminution in its going-concern values.

38. Neither defendant is immune from injunctive relief. See 41-4-17(A) NMSA and applicable federal law.

## RELIEF SOUGHT

**WHEREFORE**, the Plaintiff Buena Vista Estates, Inc., respectfully requests that this Court enter judgment on behalf of the Plaintiff:

A. Adjudge and decree that SFC and SFSWMA have violated 15 U.S.C. Section 1 of the Sherman Antitrust Act, violated the New Mexico Antitrust Act, NMSA §§ 57-1-1 to 57-1-19 and committed common law unfair competition; and enjoin SFC and SFSWMA from production, sale and distribution of basalt material from Caja del Rio Landfill; and

B.   Such other and further relief as the Court deems appropriate and equitable.

Respectfully Submitted,

DOMENICI LAW FIRM, P.C.

*/s/ Pete V. Domenici, Jr.*
Pete V. Domenici, Jr., Esq.
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
Telephone:  (505) 883-6250
Fax:  (505) 884-3424
Email:  pdomenici@domenicilaw.com



# SANTA FE SOLID WASTE MANAGEMENT AGENCY

*Caja del Rio Landfill*
*Buckman Road Recycling and Transfer Station*

July 23, 2014

Board of County Commissioners
Santa Fe County
P.O. Box 276
Santa Fe, NM 87504

RE: CDRC Case #ZMIN 13-5360 Buena Vista Estates, Inc. and Sociology LLC
Application to Mine La Bajada Mesa

Dear Commissioners Anaya, Chavez, Holian, Mayfield, and Stefanics:

By way of introduction, I am Randall Kippenbrock, Executive Director of the Santa Fe Solid Waste Management Agency (Agency) that operates the Caja del Rio Landfill and the Buckman Road Recycling and Transfer Station. The Agency is jointly governed by the City of Santa Fe and Santa Fe County. I want to dispel the inaccurate and somewhat damaging comments made in the closing remarks by the applicant's attorney, Pete Domenici, Jr., at the June 11, 2014, public hearing for the above referenced application.

The transcript from Mr. Domenici's comments on the quality of rock at the Caja del Rio Landfill is as follows:

*"I want to think all the public participants for all of their courtesy and politeness to Mr. Stickers and myself as the only two proponents here. We're quite commandeered and we appreciate the politeness.*

*I want to just hit on a couple of points. First of all, we hit and comment from the manager of Caja del Rio. The problem with Caja del Rio and the reason they have so much material stockpiled is the quality is not suitable. And that is what Mr. Hooper's testimony indicated. It is much more limited. It is much more limited quality and in use is much more limited. So it will be stockpiled for a long time. But the material that is not significant enough to be crusher to be crushed in either provided by the Walla Quarry or trucked from Algodones. And the Algodones pit are running out and are closing so we're looking at losing that source and I think we are going to need a source, for Santa Fe to keep aggregate affordable for these construction that is anticipated by the various plans that we've discussed."*

Mr. Domenici's comments do not give an accurate portrayal with regard to the quality of rock at the Caja del Rio landfill. Attached is a June 24, 2014, letter from Western Technologies Inc, an accredited laboratory by the American Association of State Highway and Transportation, attesting that they have provided many years of materials-acceptance reports on many of the aggregates produced at the Caja del Rio Landfill. Western Technologies also attested that the crushed basalt rock meets the NMDOT and FHWA requirements for concrete, asphalt, and base course materials. Western Technologies have tested and produced materials-acceptance reports for the following agencies:

(505) 424-1850 Office (505) 424-1839 Fax    149 Wildlife Way    Santa Fe 87506-8302



EXHIBIT

A

- New Mexico Department of Transportation (NMDOT)
- Federal Highway Administration (FHWA)
- Federal Aviation Administration (FAA)
- Bureau of Indian Affairs (BIA)
- City of Santa Fe Public Works
- Private contractors and subcontractors

The Agency recently entered into an eight-year contract with Del Hur Industries of Port Angeles, WA to continue to crush and sell aggregate materials produced from the Caja del Rio Landfill. The Agency estimates there is a stockpile of 1.6 million tons of unprocessed basalt rock at the landfill. The Agency anticipates that it will take 8 to 16 years to sell it all, depending on the market and economy.

In conjunction with the agreement with the Agency, Del Hur Industries has an exclusive aggregate supply agreement with Associated Asphalt and Materials of Espanola, NM where Associated Asphalt and Materials agrees to purchase 110,000 tons of aggregate materials annually from Del Hur Industries. Most of the aggregate materials are transported to Associated Asphalt and Materials' asphalt plants located in Santa Fe and Espanola.

Del Hur Industries anticipates additional 50,000 tons of aggregate materials will be sold annually to customers other than Associated Asphalt and Materials.

Based on the past eighty years of aggregate sales at the Caja del Rio Landfill, it is my opinion that there is not a need for a second basalt rock quarry in Santa Fe County. Furthermore, I feel both the Agency and County have a moral obligation to ensure that the stockpile of unprocessed basalt rock is used first before approving another rock quarry. By doing this, it will show that we are being "good neighbors" to our constituents, particularly to the residents living near the Caja del Rio Landfill and the Las Campanas Subdivision.

If you have any questions, please contact me at (505) 424-1850, ext. 100 or rkippenbrock@sfswma.org.

Respectfully,

*Randall Kippenbrock* J. *Randall Kippenbrock*
Randall Kippenbrock, P.E.
Executive Director

Attachment: June 24, 2014 Western Technologies Inc. Letter to Del Hur Industries

260

THE BOARD OF COUNTY COMMISSIONERS
OF SANTA FE COUNTY
ORDINANCE NO. 2014 - 8

AN EMERGENCY INTERIM DEVELOPMENT ORDINANCE IMPOSING A TWELVE
MONTH MORATORIUM ON DEVELOPMENT APPROVALS OR THE ISSUANCE OF
DEVELOPMENT PERMITS FOR SPECIFIED DEVELOPMENTS OF COUNTYWIDE
IMPACT

BE IT ENACTED BY THE BOARD OF COUNTY COMMISSIONERS OF SANTA FE
COUNTY:

Section 1.     Short Title.  This Ordinance shall be known as the "DCI Moratorium
Ordinance."

Section 2.     Definitions.  As used in the DCI Moratorium Ordinance, the following
terms have the following meanings:

2.1.     "Board" means the Board of County Commissioners of Santa Fe County.

2.2.     "County" means Santa Fe County.

2.3.     "DCIs" means Developments of Countywide Impact.

2.4.     "DCI Regulations" means the regulations to be adopted by the Board and
codified in Section 11.3 of the SLDC.

2.5.     "Development", "Development Approval", "Development Order", and
"Development Permit" have the same meaning as is given those terms in the Land Development
Code and SLDC, as applicable.  In addition, "Development Permit" expressly includes master
plan approvals, development plan approvals, zoning or rezoning approvals, and approvals of
mining zones pursuant to Article XI of the Land Development Code.

2.6.     "Junkyard" means a place where scrap materials, including automobile bodies and
parts, construction debris or metal, are stored or stockpiled for reuse, parts salvage or destruction,
and generally, but not always, associated with a junk or scrap business.

2.7.     "Landfill" means an area of land upon which solid waste is disposed of in
accordance with standards, rules, or orders established by the State of New Mexico.

2.8.     "Sand and gravel extraction" means mineral extraction activity for construction
materials, including but not limited to, stone, sand, gravel, aggregate, or similar naturally
occurring construction materials.

2.9.     "SGMP" means the Santa Fe County Sustainable Growth Management Plan,
adopted by the Board by Resolution Nos. 2010-210 and 2010-225.

2.10.   "SLDC" means the Sustainable Land Development Code, adopted by the Board
by Ordinance No. 2013-6.

Page 1 of 5

EXHIBIT
B

**Section 3. Findings.**

3.1.     The Board has previously found in Section 11.1 of the SLDC, and hereby confirms, that DCIs have potential for far reaching effects on the community. DCIs are developments that would place major demands on public facilities, the County's capital improvement plan and budget, and/or have the potential to affect the environment and public health, safety, and welfare beyond the impacts on immediately neighboring properties. DCIs have the potential to create serious adverse noise, light, odor and vibration; explosive hazards; traffic congestion; and burdens on County emergency response services. Therefore, special regulation of DCIs is necessary:

3.1.1. to protect the health, safety and welfare of the citizens, residents, and businesses of the County from the potentially harmful or hazardous impacts of DCIs;

3.1.2. to ensure short and long-term compatibility (both on-site and off-site) of DCIs and the County at large;

3.1.3. to preserve the quality and sustainability of life, the economy, infrastructure, environment, natural and cultural resources, and natural landscapes; and

3.1.4. to protect the degradation of air, surface water and groundwater, soils, environmentally sensitive lands and visual and scenic qualities.

3.2.     Existing regulations in the Land Development Code for the DCIs identified in Section 4 of the DCI Moratorium Ordinance are either non-existent or inadequate to meet the special regulatory needs identified in Section 3.1.

3.3.     Development of the DCI Regulations for the DCIs identified in Section 4 will require:

3.3.1.   the identification of monetary and other resources;

3.3.2.   the engagement of planning, fiscal, economic, water, environmental and engineering consultants, or attorneys; and

3.3.3.   extensive hearings and workshops to solicit public input, evaluation, and recommendations.

3.4.     A twelve month moratorium on Development Approvals or Development Permits for DCIs identified in Section 4 is necessary, essential, and reasonable:

3.4.1.   to avoid a race of diligence, whereby landowners file and submit DCI development applications during the formulation and public discussion of the DCI Regulations;

3.4.2.   to avoid the establishment of non-conforming uses or the need to respond in an ad hoc fashion to specific problems;

3.4.3.   to eliminate the need for hasty adoption of permanent controls;

3.4.4.   to allow the planning and implementation process to run its full and natural course with widespread citizen input and involvement, public debate, and full consideration of all issues and points of view; and

3.4.5.   to allow for the creation of legally and scientifically sound plans, policies and regulations.

3.5.    This DCI Moratorium Ordinance constitutes a valid exercise of the County's express and implied zoning authority and police power, consistent with NMSA 1978, § 3-21-1 (granting counties zoning authority, including the power to "regulate and restrict within its jurisdiction" . . . . the "location and use of buildings, structures and land for trade, industry, residence or other purposes") and NMSA 1978, § 4-37-1 (granting counties, among other powers, "those powers necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants"). *Brazos Land, Inc. v. Board of County Commissioners of Rio Arriba County,* 1993-NMCA-013, ¶ 30, 115 N.M. 168 (N.M. Ct. App. 1993) ("Where the Board [of County Commissioners] enacted a moratorium for the purpose of, inter alia, promulgating more stringent waste disposal requirements for subdivisions, and where such requirements and restrictions reasonably advanced a legitimate state interest in the safety and health of the inhabitants of Rio Arriba County, we hold that the Board's moratorium was a valid exercise of its police power and its express and implied authority.").

**Section 4.    DCIs Subject to Moratorium.**  The following DCIs are subject to the moratorium imposed by Section 6:

4.1.    landfills;

4.2.    junkyards; and

4.3.    sand and gravel extraction activity requiring blasting.

**Section 5.    DCIs Exempt from Moratorium.**  The following DCIs are exempt from the moratorium imposed by Section 6 either because the Board has determined that existing regulations are acceptable to serve the special regulatory needs of DCIs until the adoption of new DCI Regulations or because the Board has not yet defined the scope of activity requiring regulation as a DCI:

5.1.    oil and gas drilling and production;

5.2.    mining and resource extraction (other than sand and gravel extraction);

5.3.    substantial land alterations;

5.4.    large-scale feedlots and factory farms; and

5.5.    sand and gravel extraction that does not require blasting.

As land uses and impacts are further defined, the Board may amend the DCI Moratorium Ordinance to make other DCIs subject to the moratorium imposed by Section 6.

**Section 6.    Moratorium.**  During the effective period of the DCI Moratorium Ordinance and except as provided in Section 7:

6.1.    no new applications for Development Approval or a Development Permit related to a DCI identified in Section 4 shall be accepted by the County;

6.2.    no existing and filed application for Development Approval or a Development Permit related to a DCI identified in Section 4 shall be further processed or acted upon by the Board or other County committee, commission, department, or official; and

6.3.    no Development Approval or Development Permit related to a DCI identified in Section 4 shall be issued.

SFC CLERK RECORDED 03/18/2014

**Section 7.   DCIs with Vested Rights are Exempt from Moratorium.**

**7.1.**   Section 6 shall not apply to Development Permits necessary to implement DCIs identified in Section 4 with vested rights as of the effective date of the DCI Moratorium Ordinance, as determined by the County Land Use Administrator in accordance with New Mexico law.  To have vested rights, generally (i) there must be prior approval by the County for use of buildings or land for the DCI and (ii) there must be a substantial change in position in reliance on the approval.

**7.2.**   Any person aggrieved by the Land Use Administrator's decision with respect to whether a DCI identified in Section 4 has vested rights may appeal that decision in accordance with the appeal provisions of the Land Development Code or SLDC, as applicable.  Any person aggrieved by the Board's decision on appeal may appeal the Board's decision to District Court, pursuant to NMSA 1978, § 3-21-9 and § 39-3-1.1.

**Section 8.   Prioritization of DCI Regulations for DCIs Identified in Section 4.**
The County Manager is directed to require County staff to immediately begin the process to engage the professionals necessary to develop the DCI Regulations for the DCIs identified in Section 4 and to take such other action as is necessary to expeditiously develop such regulations, any other necessary amendments to the SLDC or SGMP, and any other ordinances or documents necessary to implement the DCI Regulations for the DCIs identified in Section 4 or carry out the purposes of this DCI Moratorium Ordinance.

**Section 9.   Repeal of Inconsistent Ordinances.**  All ordinances or parts of any ordinances that irreconcilably conflict with this DCI Moratorium Ordinance are hereby repealed to the extent of such conflict.

**Section 10.   Severability.**  If a provision of the DCI Moratorium Ordinance or its application to any person or circumstance is held by a court of competent jurisdiction to be invalid, the invalidity does not affect other provisions or applications of the DCI Moratorium Ordinance that can be given effect without the invalid provision or application, and to this end the provisions of the DCI Moratorium Ordinance are severable.

**Section 11.   Effective Period.**

**11.1.**  Due to the emergency declared in Section 3.2, it is necessary for the protection of the public health and safety of the County that this DCI Moratorium Ordinance take effect immediately upon recordation.  Should a court of competent jurisdiction determine that it has the authority to question the Board's declaration of emergency and that emergency conditions did not exist justifying the immediate efficacy of the DCI Moratorium Ordinance, the DCI Moratorium Ordinance shall take effect on the first date otherwise allowed by law.

**11.2.**  The DCI Moratorium Ordinance is repealed on September 16, 2015; provided that the Board may extend the effective period for additional reasonable periods of time if, in its legislative discretion, such extension is warranted.

PASSED, APPROVED AND ADOPTED THIS 16TH DAY OF SEPTEMBER, 2014.
THE BOARD OF COUNTY COMMISSIONERS
OF SANTA FE COUNTY

_Daniel Mayfield, Chair_

ATTEST:

_Geraldine Salazar, County Clerk_        9-16-2014

APPROVED AS TO FORM:

_Gregory S. Shaffer, County Attorney_



```
COUNTY OF SANTA FE        )        BCC ORDINANCE
STATE OF NEW MEXICO       ) ss     PAGES: 5
I Hereby Certify That This Instrument Was Filed for
Record On The 16TH Day Of September, 2014 at 02:12:02 PM
And Was Duly Recorded as Instrument # 1746151
Of The Records Of Santa Fe County
                              Witness My Hand And Seal Of Office
Deputy                                        Geraldine Salazar
                                         County Clerk, Santa Fe, NM
```

Page 5 of 5